IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| BARBARA HAIGLER, as personal Representative for the ESTATE OF TANGELA HAILGER., <br><br> Plaintiff, <br><br> v. <br><br> ELI LILLY AND COMPANY; <br><br> Defendants. | CASE NO.: 2:07-cv-00191-MHT-TFM <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Comes now Plaintiff, Barbara Haigler, as personal representative of the Estate of Tangela Haigler, deceased and for her complaint against defendants and states the following:

### STATEMENT OF PARTIES

1.  Plaintiff, Barbara Haigler, is an individual over the age of nineteen (19) years and a resident of Montgomery County, Alabama. At all times material hereto, Barbara Haigler is the sole surviving heir to the Estate of Tangela Haigler, deceased.

2.  At all times herein mentioned, Defendants ELI LILLY AND COMPANY, (hereafter "ELI LILLY") is a corporation existing under the laws of incorporation of the State of Indiana, with its principal place of business at Lilly Corporate Center, Indianapolis, Indiana 46285.

### JURISDICTION AND VENUE

3.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as the matter alleged involves an amount in excess of $75,000 and is between citizens of different States.

4. Venue is proper in the United States District Court for the Middle District of Alabama pursuant to 18 U.S.C. § 1391 in that the ZYPREXA at issue was prescribed and purchased in Montgomery County, Alabama, the physician was induced to prescribe ZYPREXA in Montgomery County, Alabama, by Defendants, and the death of Tangela Haigler, the wrong at issue in this lawsuit occurred in Montgomery County, Alabama.

## FACTUAL ALLEGATIONS

5. Plaintiff's daughter, Tangela Haigler, deceased; ingested ZYPREXA manufactured by Defendants ELI LILLY and sustained serious injuries.

6. As a direct, proximate, and legal result of the ingestion of ZYPREXA, Tangela developed adult onset Diabetes and later died from a diabetic induced heart attack.

7. ZYPREXA is among a group of drugs called the "atypical antipsychotic drugs" prescribed for the treatment of certain disorders. Among these disorders are schizophrenia and bipolar mania.

8. At all times relevant, to this action the Defendants Eli Lilly manufactured, created, designed, tested, labeled, sterilized, packaged, distributed, supplied, marketed, sold, advertised, and otherwise distributed ZYPREXA.

9. ZYPREXA has been widely advertised by the Defendants as an effective treatment for bipolar disorder and schizophrenia, with fewer adverse side effects than other treatments.

10. Defendant Eli Lilly further induced physicians to prescribe ZYPREXA for treating disorders for which the FDA had not approved ZYPREXA.

11. Defendant Eli Lilly aggressively marketed ZYPREXA in the United States, and in this judicial district.

12. The Defendant Eli Lilly and Fictitious Defendants "A", "B", and "C" undertook advertising campaigns promoting the virtues of ZYPREXA in order to induce widespread use of the product.

13. The advertising, by affirmation, misrepresentation and/or omission, falsely and fraudulently sought to create the image and impression that the use of ZYPREXA was safe for human use and had fewer side effects and adverse reactions than other methods of treatment for bipolar disorder and schizophrenia.

14. The Defendants purposefully minimized and understated health hazards and risks associated with ZYPREXA. The Defendants, through literature and oral statements, deceived potential users of ZYPREXA and their physicians by relaying positive information, including testimonials from satisfied users and by manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. The Defendants falsely and fraudulently withheld relevant information from potential users of ZYPREXA.

15. Plaintiff is informed and believes and thereon alleges that total profits from the sale of ZYPREXA exceeds billions of dollars.

16. At least as early as 1998, the medical literature conclusively revealed data that linked ZYPREXA with causing diabetes. An indicative report was published on October 15, 1998, in the Society of Biological Psychiatry, Volume 44, Number 8, pages 778-83, titled "Novel Antipsychotics and Onset Diabetes." Other numerous reports and studies are prevalent throughout the medical literature from 1998 through the present

which, detail a causal link between the ingestion of ZYPREXA and the development of hyperglycemia, diabetes and ketoacidosis, as well as many other undisclosed risks.

17. On July 1, 2002, Duke University Medical Center issued a Press Release about a finding that linked ZYPREXA to early onset diabetes. The researchers identified 289 cases of diabetes in patients who had been prescribed ZYPREXA. These findings were published on July 2, 2002, in the Medical Journal of Pharmacotherapy, Vol. 22, No. 7, pages 841-52. The known danger that the Defendants' product ZYPREXA was causing hyperglycemia and diabetes was never indicated in any manner by Defendants to Plaintiff or to Plaintiff's physicians who prescribed the product to Plaintiff. Plaintiff was unaware of said defect of said product prior to ingesting ZYPREXA.

18. The physician who prescribed ZYPREXA to Plaintiff relied on the representations made to him by the Defendants prior to the date of prescribing ZYPREXA for use. The physicians relied in the representations regarding the safety of ZYPREXA, and would not have recommended for use or prescribed ZYPREXA if he had known the true facts regarding the safety of ZYPREXA.

19. Prior to the date upon which the aforesaid product was prescribed to Tangela, the Defendants knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public for the aforesaid purpose. The dangers of this product included, by way of example, the likelihood of developing hyperglycemia, pancreatitis, diabetes, or ketoacidosis and other injuries. The Defendants failed to take appropriate action to cure the nature of these defects or to warn users of the product or their physicians of such dangerous characteristics.

**COUNT ONE**
**[Wrongful Death – Strict Liability]**

20. Plaintiff hereby incorporates by reference as if fully set forth herein each and every allegation in paragraph 1-20, inclusive, of this Complaint.

21. Defendants have engaged in the business of selling, distributing, supplying, manufacturing, marketing, and/or promoting ZYPREXA, and through that conduct they knowingly and intentionally placed ZYPREXA into the stream of commerce with full knowledge that it would arrive in the judicial district where the deceased, Tangela Haigler, ingested it. Defendants did in fact sell, distribute, supply, manufacture, and/or promote, individually and collectively, ZYPREXA to Plaintiff, and to her prescribing physician. Additionally, Defendants expected the ZYPREXA they were selling, distributing and supplying, manufacturing and/or promoting to reach, and ZYPREXA did in fact reach, prescribing physicians and consumers in this State in this judicial district, including Tangela Haigler, and her prescribing physician, without substantial change in the condition of the product.

22. At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by Defendants and ingested by Plaintiff. Given the severity of the adverse effects of ZYPREXA, the aforesaid product was defective in that it was not properly prepared and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of ZYPREXA. These defects caused serious injuries to the user when ZYPREXA was used in its intended and foreseeable manner, i.e., when it was ingested as prescribed, and in the manner recommended by Defendants.

23. Defendants knew that the aforesaid product was to be used by the user without inspection for defects herein.

24. The deceased, Tangela Haigler, used the product for its intended purpose.

25. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in treating bipolar disorder and/or schizophrenia, involved in substantial dangers not readily recognizable by the ordinary user of the product. The Defendants failed to warn of the known or knowable likelihood of injury including but not limited to the likelihood the user would develop diabetes, pancreatitis, hyperglycemia and/or ketoacidosis.

26. Tangela Haigler did not know, nor did she have reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused Tangela Haigler to acquire Diabetes and for which she began treatment.

27. On or about March 2, 2005, and as a proximate result of the Defendants' conduct, Tangela Haigler died due to a diabetic induced heart attack.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in her favor and against Defendants in an amount of Punitive and Exemplary damages as awarded by a struck jury.

### COUNT TWO
### [Wrongful Death - Negligence]

28. Plaintiff hereby incorporates by reference, as is fully set forth herein, each and every allegation contained in paragraphs 1 through 28, inclusive, of this Complaint.

29. At all times herein mentioned, Defendants had a duty to properly design manufacture, compound, test, inspect, package, label, distribute, market, examine,

maintain supply, provide proper warnings and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous side effects.

30. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

31. The Defendants so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over promoted and supplied the aforesaid products that it was dangerous and unsafe for the use and purpose for which it was intended.

32. The Defendants negligently failed to warn of the nature and scope of dangers associated with ZYPREXA.

33. The defendants were aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendants knew or should have known that ZYPREXA caused serious injuries, it failed to disclose the known or knowable risks associated with the products as set forth above. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard for the safety of Tangela Haigler, deceased.

34. As a result of the carelessness and negligence of the Defendants as alleged here in and in such other ways to be later shown, the aforesaid product caused the death of Tangela Haigler as herein alleged.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in her favor and against Defendants in an amount of Punitive and Exemplary damages as awarded by a struck jury.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action.

Respectfully Submitted,

_____
Zachary T. Collins
Attorney for Plaintiff

**OF COUNSEL:**

ZACHARY T. COLLINS, ATTORNEY AT LAW, LLC.
207 Montgomery Street, Suite 215
Montgomery, AL 36104
(334) 263-5575

### CERTIFICATE OF SERVICE

I, Zachary T. Collins, certify that on the 30th day of March, 2007, the foregoing document was served on counsel listed below, properly addressed and pre-paid, in the following manner:

( ) Facsimile;
( ) Facsimile, original to follow by United States mail, first class, properly addressed;
(X) United States mail, first class, properly addressed;

( ) United States mail, Express Mail delivery;
( ) Federal Express, overnight delivery;
( ) United Parcel Service, overnight delivery;
( ) Hand delivery;
(X)  CM/ECF

**James C. Barton, Jr.**
Johnston, Barton, Proctor & Powell, LLP
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue, North, Suite 2900
Birmingham, AL 35203-1128
205-458-9441
205-458-9400 (fax)

**Alan Daniel Mathis**
Johnston, Barton, Proctor & Powell, LLP
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203-2618
205-458-9400
205-458-9500 (fax)

_____
OF COUNSEL